Patricia LaCROIX

v.

F. Evans CARON.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1980.

Decided Dec. 12, 1980.

Glen Niemy, Portland (orally), for plaintiff.

Daniel G. Lilley Law Offices, P. A., E. Paul Eggert, Portland (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS and GLASSMAN, JJ.

GLASSMAN, Justice.

Sometime in the fall of 1977, the plaintiff, Patricia LaCroix, permitted the defendant, Dr. Caron, a podiatrist, to attempt to remove bunions from her feet. Less than two years later, the plaintiff filed suit against Dr. Caron for malpractice, alleging that her feet were permanently injured as a result of his negligence. In his answer, Dr. Caron included a motion to dismiss the plaintiff's complaint for failure to comply with the mandatory notification procedures set out in 24 M.R.S.A. § 2903. The defendant relied on M.R.Civ.P. 12(b)(1), lack of subject matter jurisdiction. After hearing, the Superior Court granted the defendant's motion to dismiss and a judgment dismissing the plaintiff's complaint was entered. We reverse that judgment.[1]

Section 2903 is a part of the Maine Health Security Act (the Act), 24 M.R.S.A. §§ 2501–2905. The Act was adopted by the Maine Legislature in P.L.1977, ch. 492, sec. 3. This enactment followed a study by The Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance, which Commission had been created by P. & S.L.1975, ch. 73. The purpose of the Commission was stated to be

> to supervise the preparation, in final legislative draft form, of a proposal to insure the availability of medical and hospital malpractice insurance to *physicians* and hospitals throughout the State and to develop a more equitable system of relief for malpractice claims. P. & S.L.1975, ch. 73, sec. 1 (emphasis added).

Much of the data developed by the Commission for its report related to the cost of malpractice insurance for physicians and hospitals. The Act defines "physician" as "any natural person authorized by law to practice medicine or osteopathic medicine within this State." 24 M.R.S.A. § 2502(3). The Act establishes two methods for the potential resolution of malpractice claims

---

1. Because of our conclusion that 24 M.R.S.A. § 2903 is inapplicable to this proceeding, we intimate no opinion as to whether in a case to which Section 2903 is applicable 1) failure to comply with Section 2903 deprives the court of jurisdiction and 2) the plaintiff must allege compliance with Section 2903 in his complaint or the defendant must raise the issue by answer.

without the necessity of resort to litigation. The first method is medical malpractice arbitration. *See* 24 M.R.S.A. §§ 2701–15. The statutory applicability of the arbitration procedure is stated as follows:

> The provisions of this subchapter shall be applicable to the arbitration of a dispute, controversy or issue arising out of or resulting from injury to, or the death of, a person caused by the alleged error, omission or negligence in the performance of professional services by a health care provider, *physician* or the agent or employee of a provider or physician, or based on a claimed performance of the services without consent, in breach of warranty or in violation of contract. 24 M.R.S.A. § 2701(1) (emphasis added).[2]

The second statutory method provided is the use of malpractice advisory panels. 24 M.R.S.A. §§ 2801–09. The function of the malpractice advisory panels is:

> To prevent, where possible, the filing of court actions against *physicians* for professional malpractice in situations where the facts do not allow at least a reasonable inference of malpractice .... 24 M.R.S.A. § 2801(1) (emphasis added).

 Section 2903, which requires ninety days' written notice of claim before filing a medical malpractice action, was intended as a means of implementing the dispute resolution procedures established by the Act. *See* Report of The Commission to Revise the Laws Relating to Medical and Hospital Malpractice Insurance at xxiii (1977). We conclude, therefore, that Section 2903 has no application to malpractice actions against podiatrists since podiatrists, not being physicians within the meaning of the Act,[3] are not subject to the dispute resolution procedures of the Act. We cannot believe the Legislature intended to limit the right of a plaintiff to bring an action against a podiatrist for negligence without making available to such a claimant the dispute resolution procedures of the Act. For that reason, we conclude the plaintiff's complaint was improperly dismissed.

The entry is:

*Judgment of dismissal reversed.*

All concurring.

---

**2.** " 'Health care provider' means any hospital, clinic, nursing home or other facility in which skilled nursing care or medical services are prescribed by or performed under the general direction of persons licensed to practice medicine or surgery in this State and which is licensed or otherwise authorized by the laws of this State." 24 M.R.S.A. § 2502(2).

**3.** The requirements for a license to practice medicine are found in 32 M.R.S.A. § 3271. The requirements for a license to practice osteopathic medicine are found in 32 M.R.S.A. § 2571. The requirements for a license to practice podiatry are found in 32 M.R.S.A. § 3651. A comparison of these statutes demonstrates that podiatrists are not physicians within the meaning of the Act.